IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MIDLAND MEADOWS
SENIOR LIVING, LLC,,

          Petitioner,

v.                                                                    CIVIL ACTION NO.   3:13-26563

FIRST MERCURY INSURANCE COMPANY,
& ARCON GROUP, INC.,

          Respondents.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Motion to Dismiss of Respondent First Mercury Insurance Company based upon Federal Abstention or, *in the Alternative*, to Stay this Action Pending Resolution of the Declaratory Judgment Action Pending in the Court of Common Pleas for Dauphin County, Pennsylvania. ECF No. 9.  Also pending is Motion to Dismiss of Respondent First Mercury Insurance Company as to the Crossclaims of Respondent Arcon Group, Inc. ECF No. 26.   For the following reasons, the Court **DENIES, in part,** and **GRANTS, in part,** both motions.

## I.
## FACTUAL AND PROCEDURAL HISTORY

On June 3, 2013, Petitioner Midland Meadows Senior Living, LLC (hereinafter Midland Meadows) filed an action against Respondent Arcon Group, Inc., among others, in the Circuit Court of Cabell County, West Virginia, regarding the construction of a senior living facility located in Ona, Cabell County, West Virginia.  As Arcon Group failed to answer the Complaint, Midland Meadows filed for default judgment.  The Circuit Court scheduled a hearing

for September 26, 2013, but the matter was later continued by Order entered on September 19, 2013, until October 30, 2013. On November 5, 2013, the Circuit Court granted default for liability against Arcon Group.

Arcon Group, which is headquartered and has its principal place of business in Hummelstown, Pennsylvania, is insured by First Mercury Insurance Company (hereinafter First Mercury). First Mercury states it is an Illinois excess and surplus lines insurer corporation with its statutory home office in Southfield, Michigan. First Mercury asserts it issued Arcon Group commercial general liability policies through an insurance broker located in Glenside, Pennsylvania. First Mercury states Arcon Group never advised it of the underlying lawsuit in West Virginia, and it first learned of the action on September 23, 2013, when it received correspondence directly from Midland Meadow's counsel. First Mercury asserts it spoke with Bud Miller, Arcon Group's president, the following day and Mr. Miller stated he did not want First Mercury involved in the underlying action. As a result, on September 26, 2013, First Mercury filed for Declaratory Judgment against Arcon Group in state court in Dauphin County, Pennsylvania, which is the county where Arcon Group is located and where the policies were issued. Pursuant to Pennsylvania law, First Mercury named Midland Meadows as a nominal party. In the action, First Mercury seeks a declaration that it has no duty to defend Arcon Group and it has no obligation to indemnify it for the claims made in the underlying action filed by Midland Meadows.

Thereafter, on October 24, 2013, Midland Meadows filed a declaratory action in this Court against First Mercury and Arcon Group asking for this Court to declare that the

insurance policies issued by First Mercury cover the claims Midland Meadows brought in state court. In response, First Mercury filed the pending motion to dismiss or to stay this action on the grounds that it is identical to the declaratory action pending in Pennsylvania. Arcon Group answered the Complaint and filed four cross-claims against First Mercury. In its cross-claims, Arcon Group first asks for declaratory relief that First Mercury has a duty to defend it in the underlying suit brought by Midland Meadows. Second, Arcon Group asserts a claim of breach of implied duty of good faith and fair dealing against First Mercury. Third, Arcon Group claims that First Mercury violated West Virginia's Unfair Trade and Practices Act. Fourth, Arcon Group asserts a claim under West Virginia law for common law bad faith against First Mercury. First Mercury filed a motion to dismiss these claims on January 30, 2014.

On February 10, 2014, counsel for Arcon Group moved to withdraw from this action. The Court held a hearing on the motion on March 5, 2014. Mr. Miller, as the corporate representative of Arcon Group, attended the hearing. The Court granted the motion to withdraw and stayed the case for 14 days to allow Arcon Group to obtain new counsel and for counsel to file a notice of appearance. To date, a notice of appearance has not been filed, and Arcon Group has not responded to First Mercury's motion to dismiss the cross-claims. On March 26, 2014, this Court entered an Order allowing the case to proceed and reiterated to Arcon Group that it only may participate through a licensed attorney.

## II.
## ABSTENTION

The Federal Declaratory Judgment Act provides in relevant part that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party

seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201, in part. As the Declaratory Judgment Act is permissive in nature, it bestows upon "federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (noting the statutory language uses the word "may"). When exercising such discretion, a court should ordinarily address the issues raised in a declaratory judgment when the relief sought (1) "will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937). However, courts should avoid issuing declaratory judgments when the result would be "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Id*.

In *Nautilus Insurance Co. v. Winchester Homes, Inc.*, 15 F.3d 371 (4th Cir.1994), the Fourth Circuit Court of Appeals further identified four specific factors to guide a court's analysis when a parallel state court action is pending:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law"[; and (iv)] whether the declaratory judgment action is being used merely as a device for "procedural fencing"—that is, "to provide another forum in a race for res judicata" or "to achieve a federal hearing in a case otherwise not removable."

15 F.3d at 376-77 (4th Cir.1994) (citations omitted).   Guided by these principles, the Court finds it should abstain.

First, the Court looks to the strength of the having the issues presented decided by the Pennsylvania state court.  In this regard, First Mercury argues that Pennsylvania, not West Virginia law, governs the policies at issue.   Upon review, the Court agrees.

As this Court's jurisdiction is based upon diversity, the Court must apply West Virginia's choice-of-law rule to determine whether West Virginia or Pennsylvania law controls.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).   To determine what conflict rule to apply, the Court first must characterize the claim being made. *Energy Corp. of Am. v. Bituminous Cas. Corp.*, 543 F. Supp.2d 536, 542 (S.D. W. Va. 2008) (stating "[t]he first step in any conflicts analysis is to characterize the type of issue involved in order to determine what West Virginia conflict rule to apply." (citation omitted)).   In this case, the declaratory judgment asks the Court to determine whether the claims asserted in the underlying civil action are covered by the insurance policies.  In *Liberty Mutual Insurance Co. v. Triangle Industries, Inc.*, 390 S.E.2d 562 (W. Va. 1990), the West Virginia Supreme Court reiterated "that the interpretation of insurance policy coverage, rather than liability, is treated as a contract question for purposes of conflicts analysis." 390 S.E.2d at 565 (citing *Lee v. Saliga*, 373 S.E.2d 345, 350 (1988)).   Thus, the Court must focus its "analysis on the conflicts of law rule applicable to a contract issue." *Id*.

In *Triangle Industries,* the West Virginia Supreme Court relied upon Section 6 of the *Restatement (Second) of Conflict of Laws* and concluded that:

> In cases involving the interpretation of an insurance policy, made in one state to be performed in another, the law of the state of the formation of the contract shall govern, unless another state has a more significant relationship to the transaction and the parties, or the law of the other state is contrary to the public policy of this state.

Syl. Pt, *Triangle Industries*. The Court explained that the reason for this rule is that it promotes "'certainty, predictability and uniformity of result,' as well as 'ease in the determination and application of the law to be applied' is essential to the interpretation of an insurance policy when the law is not otherwise chosen by the parties.'" 390 S.E.2d at 567. The Court further stated that it simply believed "that, absent specific provisions to the contrary, it is infinitely more practicable to permit one policy to cover the numerous contracts rather than to require both . . . [the insured] and the insurance companies to negotiate individual policies based upon each state where an insured risk is located." *Id*. (footnote omitted).

*Triangle Industries* speaks precisely to the type of situation that exists in the present case. Here, Arcon Group, a Pennsylvania company, was issued commercial general liability policies to insure risks in numerous states. The policies were negotiated through a Pennsylvania insurance broker, and the policies were delivered in Pennsylvania. The only connection between West Virginia and the insurance policies at issue is the allegation that they cover the claims in the underlying lawsuit. However, it is clear under *Triangle Industries* that this is an insufficient reason to apply West Virginia law to the policies. Instead, to promote the goals of certainty, predictability, uniformity, and practicality, it is Pennsylvania, not West Virginia, law that controls the contracts. Although West Virginia does have an interest in this matter, the Court finds that, for the foregoing reasons, Pennsylvania has a stronger interest. Thus, the Court finds this factor weighs in favor of abstention.

Second, the Court must consider whether the issues raised in this action can more efficiently be resolved in Pennsylvania. With respect to efficiency, the Court recognizes that the Pennsylvania action was filed first, and the Court sees no difficulty with the Pennsylvania court acting efficiently in the matter. Moreover, as Pennsylvania law controls, the Pennsylvania court is well equipped to rule on the matters in a timely manner. Although Midland Meadows argues the Pennsylvania court does not have jurisdiction over it, it was named as a nominal party in the Pennsylvania action and any jurisdictional issue raised by Midland Meadows should be resolved by the Pennsylvania court, not this Court. Thus, the Court finds that this factor also weighs in favor of abstention.

Third, the Court must determine whether there will be an unnecessary entanglement of the federal and state actions if the federal action proceeds. As the declaratory action filed here is the same as the one in Pennsylvania, resolution of the issues by this Court necessarily will overlap with the Pennsylvania action. Thus, this factor further weighs in favor of abstention.

Lastly, the Court must consider whether the parties have engaged in procedural fencing. Although Midland Meadows suggests First Mercury filed the declaratory action in Pennsylvania as a means of forum shopping, the Court finds this argument unpersuasive. First Mercury reasonably filed the Pennsylvania action within three days of finding out about the underlying action. First Mercury filed the action in Pennsylvania where Arcon Group and the insurance broker were located and the policies were issued. First Mercury also filed the action nearly a month *before* Midland Meadows filed its action in this Court. Under these

circumstances, the Court finds First Mercury reasonably elected to file its declaratory judgment in Pennsylvania, and its decision to do so does not establish that First Mercury engaged in improper forum shopping. Therefore, the Court finds this factor also weighs in favor of abstention.

Accordingly, applying the four factors identified in *Nautilus*, the Court is persuaded that the parties' dispute should be resolved through the action pending in Pennsylvania. However, as this Court is declining to proceed because of a pending state action, the Court finds that a stay of this federal action, instead of dismissal, is the preferable course, as it assures this action will not be time barred if, for any reason, the Pennsylvania court is unable to resolve the controversy. Therefore, the Court **DENIES** First Mercury's Motion to Dismiss, but **GRANTS** its motion to stay pending resolution of the declaratory judgment pending in Pennsylvania.

### III.
### Cross-Claims

First Mercury also filed a motion to dismiss the cross-claims filed by Arcon Group. Arcon Group has not responded to the motion. Nevertheless, in considering the motion, the Court finds that Arcon Group's first cross-claim seeks a declaration that First Mercury has a duty to defend it in the underlying lawsuit brought by Midland Meadows. The Court finds this cross-claim is merely the reverse of First Mercury's request in the declaratory judgment filed in Pennsylvania that the court find it has no duty to defend. Thus, as it is an integral component of a claim raised in the Pennsylvania action, the Court will not dismiss this cross-claim but hold it in abeyance with the declaratory judgment filed in this Court.

Cross-claims III and IV for violation of West Virginia Unfair Trade Practices Act and common law bad faith, however, raise a different issue. Both of these cross-claims are expressly brought under West Virginia law. However, as stated above, neither First Mercury nor Arcon Group are West Virginia companies, the policies were not issued here, and West Virginia law does not apply. Thus, any act of bad faith or unfair trade practices did not arise under West Virginia law, and the Court **GRANTS** First Mercury's motion to dismiss cross-claims III and IV. *See, e.g., M & S Partners v. Scottsdale Ins. Co.*, 227 Fed. Appx 286 (4th Cir. 2008) (affirming the district court's decision to apply Virginia law to claim brought for a violation of the Unfair Trade Practices Act and granting summary judgment for the insurer because Virginia does not have an analogous statute).

In Count II, Arcon Group alleges a breach of an implied duty of good faith and fair dealing, but it does not expressly assert whether the claim arises under West Virginia or Pennsylvania law. Given that Counts III and IV are expressly filed under West Virginia law, it is reasonable to conclude that Count II also is brought under West Virginia law. There is certainly nothing in any of the cross-claims filed by Arcon Group to indicate that it intends Pennsylvania law to apply. In addition, although Arcon Group was represented by counsel when First Mercury filed its motion, Arcon Group never responded to the motion or otherwise objected to First Mercury's characterization of the claims as being brought pursuant to West Virginia law. Thus, without any indication Arcon Group ever intended for this Court to apply Pennsylvania law to Count II, the Court **GRANTS** First Mercury's motion to dismiss the count for the above reasons.[1]

---

[1] Moreover, if Arcon Group believes there was a breach of an implied duty of good faith and fair dealing under Pennsylvania law, Arcon Group may seek to file its claim in the Pennsylvania action.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** First Mercury's motion to dismiss the declaratory judgment action, but **GRANTS** its motion to stay. ECF No. 9. In addition, the Court **DENIES** First Mercury's motion to dismiss Count I of Arcon Group's cross-claims, but **GRANTS** First Mercury's motion to dismiss Counts II, III, and IV. The Court further **DIRECTS** the parties to inform the Court as soon as the action in Pennsylvania is resolved and, until that time, file reports with the Court as to the status of the Pennsylvania action on May 1 and November 1 of each year. As this matter is stayed, the Court **DIRECTS** the Clerk to remove it from the active docket of the Court.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: May 2, 2014

_____
ROBERT C. CHAMBERS, CHIEF JUDGE